**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                         Plaintiff,<br><br>v.<br><br>COBY YOUNG and YOUNG EMERGING STRATEGIES LLC,<br><br>                         Defendants. | Case No.:  1:23-cv-15624 |

**COMPLAINT FOR INJUNCTIVE RELIEF,
<u>CIVIL MONETARY PENALTIES, AND OTHER RELIEF</u>**

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") alleges as follows:

## I.     <u>SUMMARY</u>

1.     From at least August 2019 through the present ("Relevant Period"), Defendant Young Emerging Strategies LLC ("Young Emerging Strategies"), an unregistered commodity pool operator ("CPO"), and Defendant Coby Young ("Young," collectively "Defendants"), a principal and associated person ("AP") of Young Emerging Strategies, directly solicited individuals for participation in foreign-exchange trading classes through a website, social media, and in person.  Defendants would then solicit certain class participants to participate in a commodity interest pool Defendants operated ("YES Forex Pool") that would trade in leveraged, margined, or financed retail foreign currency transactions ("retail forex").

2.     Young, through a bank account in the name of Young Emerging Strategies, received approximately $300,000 from about twenty individuals or entities ("Pool Participants") through wire transfers, cash, and online payment applications.

3.     Defendants, through verbal misrepresentations, promised to double the investments of many or all of the Pool Participants through trading retail forex. Defendants then misappropriated the majority of the funds for personal expenses and through cash withdrawals. Even though Defendants promised that they would establish subaccounts for some Pool Participants, Defendants pooled all funds in Young Emerging Strategies' bank account and only utilized a single retail forex trading account (also in the name of Young Emerging Strategies) for the limited amount of funds traded by Defendants.

4.     While Defendants returned some funds to Pool Participants, those funds were from other Pool Participants. Defendants used less than thirty-five percent of Pool Participant funds for forex trading. The little trading that Defendants engaged in was not profitable. In total, Defendants caused Pool Participants to lose approximately $275,000.

5.     Additionally, during the Relevant Period, Young Emerging Strategies failed to register as a CPO and Young failed to register as an AP of a CPO as required by the Commodity Exchange Act ("the Act") and CFTC Regulations ("Regulations"). Defendants also failed to operate the pool as a separate legal entity, failed to provide Pool Participants with certain disclosures and statements, and failed to make and keep records concerning the commodity pool and CPO as required by the Act and Regulations.

6.     Pool Participants were not eligible contract participants ("ECPs"), as defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18).

7.      By virtue of this conduct and the conduct further described herein, Defendants, either directly or as a controlling person, have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A), (C), 4k(2), 4m(1), and 4o(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A), (C), 6k(2), 6m(1), 6o(1), and Regulations 4.20, 4.21, 4.22, 4.23, 5.2(b)(1), (3), 5.3(a)(2), and 5.4, 17 C.F.R. §§ 4.20, 4.21, 4.22, 4.23, 5.2(b)(1), (3), 5.3(a)(2), and 5.4 (2022).

8.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the CFTC brings this action to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and the Regulations promulgated thereunder, and to enjoin them from engaging in any commodity interest-related activity, as commodity interest is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022).  In addition, the CFTC seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other and further relief as the Court may deem necessary and appropriate.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345, which provides that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress.  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), authorizes the CFTC to seek injunctive relief in any proper district court of the United States against any person whenever it shall appear to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

10.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the acts and practices in violation of the Act and Regulations have occurred within this District.

### III.     THE PARTIES

11.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1–26, and Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2022).

12.     Defendant **Young Emerging Strategies LLC** is an Illinois limited liability company with its last known place of business in University Park, Illinois.  Young Emerging Strategies has never been registered with the CFTC in any capacity.

13.     Defendant **Coby Young** is a resident of Illinois and is the sole owner and sole managing member of Young Emerging Strategies.  Young has never been registered with the CFTC in any capacity.

### IV.     FACTS

**A.     Defendants Fraudulently Solicited Pool Participant Funds for the YES Forex Pool.**

14.     Young Emerging Strategies operates a website that claimed it was a "a consortium of experienced Forex consultants that are focused on taking [others'] trading strateg[ies] to the next level."  Through the website, Defendants solicited Pool Participants and prospective Pool Participants to sign up for trading classes that would teach attendees how to trade leveraged, margined, or financed forex.  Once contacted by Pool Participants or prospective Pool Participants, Defendants made material misrepresentations and omissions to solicit funds for pooled investments.  Young, on behalf of Young Emerging Strategies, made the material misrepresentations and omissions in person, over the telephone, by text, and through other electronic communications.

15.     Among other things, Defendants solicited individuals to attend classes purporting to teach them how to trade forex for fees ranging from $1000 to $6000.  Defendants offered some Pool Participants and prospective Pool Participants to attend the classes for no charge.  This offer, however, had a catch.  Defendants generally solicited much larger amounts from Pool Participants and prospective Pool Participants to trade leveraged, margined, or financed retail forex in exchange for "free" attendance in Defendants' trading classes.

16.     In total, about twenty Pool Participants (who were all non-ECPs) contributed approximately $300,000 to Defendants for participation in the YES Commodity Pool.

17.     In soliciting Pool Participants, Defendants presented themselves as successful forex traders.  In reality, Defendants engaged in very little retail forex trading, and what little trading Defendants engaged in was not profitable.

18.     In soliciting Pool Participants, Young also failed to disclose that the State of Illinois Secretary of State Securities Department issued an order prohibiting him from trading securities or engaging in securities transactions, which Illinois defines to include foreign currency transactions.  The order identified past instances of Young's defrauding investors.

19.     Young often verbally represented that the Pool Participants could expect to double their investment within months.  Young would typically enter into a "Limited Partnership Investment Contract" with Pool Participants in which Young stated he would trade "'over the counter' free market global trading financial instruments and precious metals, such as but not limited to currency contracts, gold contracts, etc." and guaranteed the return of Pool Participants' initial investments—regardless of the Pool's performance.  The Limited Partnership Investment Contract also explained that Young was "investing jointly along with [the Pool Participant] as limited partners for the duration of [the] agreement."

20.     In some instances, Defendants misrepresented that they would create subaccounts for Pool Participants' funds, keep Pool Participants' funds segregated, and trade Pool Participants' funds separately from other accounts while the Pool Participant took Defendants' trading classes.

21.     In reality, however, no such separate accounts were ever created and Defendants commingled all Pool Participants' funds together.

22.     Pool Participants provided funds to Defendants by wires, cash, and through online payment applications.  Defendants pooled most Pool Participant funds in a bank account held by Young Emerging Strategies—the commodity pool operator.  From there, Defendants transferred less than thirty-five percent of funds to Young Emerging Strategies' leveraged, margined, or financed retail forex trading account.

23.     For example, Pool Participant A met Defendants through a friend.  Pool Participant A runs a youth mentorship program that assists low-income youth by providing sports equipment and introducing youth to local businesses for job placement opportunities. During an initial telephone call, Young told Pool Participant A that Young could teach him how to trade leveraged, margined, or financed retail forex.  Defendants provided Pool Participant A with a link to Defendants' online trading classes.  Defendants also offered to trade Pool Participant A's funds to help raise additional funds for Pool Participant A's youth mentorship program while Pool Participant A attended Defendants' trading classes.  Pool Participant A provided Defendants with $28,000, through two wire transfers, for Defendants to trade retail forex in a separate subaccount in Pool Participant A's name.  Defendants promised that they would return $20,000 per month to Pool Participant A from trading retail forex.  Defendants only

returned $3,000 to Pool Participant A, through a personal payment application. Defendants never established a trading account in Pool Participant A's name.

24. Pool Participant B met Defendants through a social media application. Young informed Pool Participant B that his company offered forex trading classes. After some communications, Pool Participant B and Defendants entered into an agreement that Pool Participant B would provide Defendants with $5,000 to trade leveraged, margined, or financed retail forex on Pool Participant B's behalf. Defendants claimed that they would double Pool Participant B's money while also guaranteeing that Pool Participant B would receive—at a minimum—the initial investment back. Pool Participant B never received any funds back from Defendants. Pool Participant B ultimately had to borrow money to pay medical expenses when Defendants did not return any of her funds.

25. Additionally, Pool Participant C met Young in 2021 to discuss a potential business arrangement. While Young did not hire Pool Participant C, he informed Pool Participant C that Defendants traded leveraged, margined, or financed retail forex for others. Around September 2021, Pool Participant C and Defendants ultimately entered into an agreement that Pool Participant C would provide $30,000 to Defendants for trading leveraged, margined, or financed retail forex. Pool Participant C was also allowed to take Defendants' trading classes at no charge. Pool Participant C wired $30,000 to Young Emerging Strategies' bank account. Defendants misrepresented that they would provide the original $30,000 back to Pool Participant C the following month, with an additional $10,000 returned each additional month. Pool Participant C has not received any funds from Defendants. As a result, Pool Participant C's plans to repay her student loans have been delayed.

26.     In total, Defendants returned approximately $25,000 to some Pool Participants. As a result, Pool Participants suffered around $275,000 in losses from Defendants' fraudulent conduct.

**B.     Defendants Misappropriated the Majority of Pool Funds for Personal Expenses and To Make Ponzi Payments.**

27.     Defendants misappropriated the majority of pool funds for Young's personal expenses.

28.     In the same bank account for Young Emerging Strategies that Defendants received funds from Pool Participants A, B, and C, Defendants also used Pool Participants' funds for personal expenses, including payments for online purchases, restaurants, entertainment, clothing, and medical expenses.

29.     No Pool Participant received their full initial investment back from Defendants, as promised.  Some Pool Participants, however, received partial payments, which were paid from other Pool Participants' investments.

**C.     Defendants' Misappropriation, Misrepresentations, and Omissions Were Intentional or Reckless and Operated as a Fraud on Pool Participants.**

30.     Defendants intentionally or recklessly made material misrepresentations.  Each solicitation of a Pool Participant, including claims that Defendants were experienced and profitable traders, was done with the intended purpose to obtain more funds for personal use or to make Ponzi payments to placate earlier Pool Participants.

31.     Defendants knew that their misrepresentations to Pool Participants were false, as the Pool did not exist and Defendants never had a history of profitable forex trading.

32.     Defendants never intended to trade most of the Pool Participants' funds as demonstrated by their immediate misappropriation of most Pool Participants' funds.

33.     As noted above, less than thirty-five percent of Pool Participants' funds were deposited to retail forex trading accounts as Defendants promised Pool Participants.

34.     Further, Defendants never used any Pool Participants' funds to establish subaccounts as promised, instead pooling all funds together.

35.     When Pool Participants would request the return of their investments, Young regularly misrepresented that he would make payments by a certain date.  After the date passed, Young offered excuses and eventually refused to return telephone calls, texts, and emails to most Pool Participants, while continuing to solicit new prospective Pool Participants through the operation of Defendants' website.

**D.      Defendants Failed to Register with the CFTC**.

36.     During the Relevant Period, Young Emerging Strategies acted as a CPO in that it engaged in a business of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and it solicited, accepted, or received funds, securities, property, or capital contributions for the purpose of trading in leveraged, margined, or financed retail forex transactions.

37.     Young Emerging Strategies used emails, wire transfers, text messaging, and other means or instrumentalities of interstate commerce to solicit, accept, and receive Pool Participants' funds for the purpose of trading retail forex.

38.     During the Relevant Period, Young Emerging Strategies was never registered as a CPO and was not exempt or excluded from registration as a retail forex CPO.

39.     During the Relevant Period, Young was associated with Young Emerging Strategies as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for a participation in a commodity pool.

40. During the Relevant Period, Young was never registered as an associated person of Young Emerging Strategies.

**E. Defendants Failed to Provide Pool Disclosures and Other Required Relevant Documents to Pool Participants, and Failed to Make and Keep Records Concerning the Commodity Pool and CPO**

41. Young Emerging Strategies, while acting as the CPO of the YES Forex Pool, failed to provide pool disclosures and other documents required by Regulations 4.21 and 4.22, 17 C.F.R. §§ 4.21, 4.22 (2022). Specifically, Young Emerging Strategies failed to provide Pool Participants, among other things, the required cautionary statements and risk disclosures. Young Emerging Strategies also failed to provide, on at least a quarterly basis, detailed reports to Pool Participants showing gains, losses, fees, and expenses incurred by the YES Forex Pool, as well as the total amount of withdrawals from the YES Forex Pool. Additionally, Young Emerging Strategies failed to provide Pool Participants with an annual report containing financial statements certified by an independent public accountant.

42. Young Emerging Strategies, while acting as the CPO of the YES Forex Pool, failed to make and keep records concerning the commodity pool and the CPO as required by Regulation 4.23, 17 C.F.R. § 4.23(a)-(b) (2022), including but not limited, statements of financial condition of the pool, all receipts and disbursements of money or other property, and books and records of all other transactions in which the pool operator engaged.

**F. Defendants Failed to Provide Pool Disclosures and Other Required Relevant Documents to Pool Participants**

43. Defendants did not operate the Pool as separate legal entity. Defendants never created a separate legal entity to receive contributions from Pool Participants. Although Defendants solicited money on behalf of the Pool, Defendants failed to open bank or retail forex trading accounts for the Pool. Rather, Defendants received pool funds in the name of Young

Emerging Strategies, the CPO, before the majority of funds were then misappropriated for Young's personal use, misappropriated to pay other Pool Participants, or transferred to Young's personal bank account.

44.     By transferring pool funds to Young's personal bank accounts, Defendants also commingled pool funds with non-pool funds.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND CFTC REGULATIONS

### COUNT I—Forex Fraud by Misappropriation and Misrepresentations

**Violations of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C), and Regulation 5.2(b)(1), (3), 17 C.F.R. § 5.2(b)(1), (3) (2022) (All Defendants)**

45.     Paragraphs 1 through 44 are realleged and incorporated herein by reference.

46.     Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex "shall be subject to . . . [7 U.S.C. §] 6b," except in circumstances not relevant here. Moreover, under 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b applies to forex transactions described herein "as if" they were a contract of sale of a commodity for future delivery because they were "offered to, or entered into with, a person that is not an" ECP.  Pursuant to 7 U.S.C. § 2(c)(2)(C)(vii), "[t]his Act applies to, and the Commission shall have jurisdiction over an account or pooled investment vehicle that is offered for the purpose of trading, or that trades," forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

47.     As noted above, 7 U.S.C. § 1a(18)(A)(xi), defines an ECP, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.  None of the Pool Participants is an ECP.

48. 7 U.S.C. § 6b(a)(2)(A), (C) makes it unlawful:

(1) [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market—

(A) to cheat or defraud or attempt to cheat or defraud the other person; [or] . . .

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person[.]

49. 17 C.F.R. § 5.2(b) makes it unlawful "[f]or any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) To cheat or defraud or attempt to cheat or defraud any person; [or] . . . (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

50. Defendants, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in connection with leveraged, margined, or financed retail forex transactions, knowingly or recklessly:

(1) made material misrepresentations and omissions about—

- Defendants' past success trading forex;

- the profitability of trading retail forex with Defendants;

- how Pool Participant funds would be treated, i.e., that Pool Participants would have their own separate trading subaccounts;

- the State of Illinois Secretary of State Securities Department's order prohibiting him from trading, among other things, foreign currency and identifying his past conduct in defrauding investors; and

- guaranteeing the return of Pool Participants' initial investments; and

12

(2) misappropriated Pool Participant funds.

51.     By reason of the foregoing, Young and Young Emerging Strategies LLC violated 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3).

52.     Defendants committed the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

53.     When Young committed the acts, omissions, and failures in violation of 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3), he was acting within the scope of his agency, employment, and office at Young Emerging Strategies; therefore, such acts, practices, omissions, or failures are deemed to be those of Young Emerging Strategies pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2022).

54.     At all times relevant to this Complaint, Young controlled Young Emerging Strategies, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Young Emerging Strategies' conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Young is liable for Young Emerging Strategies' violations of 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3).

55.     Each misrepresentation, omission of material fact or misappropriation, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A), (C) 17 C.F.R. § 5.2(b)(1), (3).

**COUNT II – Fraud by a Commodity Pool Operator and Its Associated Person**

**Violations of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1)**
**(All Defendants)**

56.     Paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

57.     7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar

13

form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property . . . for the purpose of trading in commodity interests, including any . . . agreement, contract, or transaction described in [S]ection 2(c)(2)(C)(i) [of the Act] or [S]ection 2(c)(2)(D)(i) [of the Act]."

58.     Pursuant to 17 C.F.R. § 5.1(d)(1), and subject to certain exceptions not relevant here, any person who operates or solicits funds, securities, or property for a pooled investment vehicle and engages in retail forex transactions is defined as a retail forex CPO.

59.     Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex and accounts or pooled investment vehicles in retail forex "shall be subject to . . . [7 U.S.C. §] 6*o*," except in circumstances not relevant here.

60.     Pursuant to 17 C.F.R. § 5.1(d)(2), any person associated with a retail forex CPO "as a partner, officer, employee, consultant or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves: (i) [t]he solicitation of funds, securities, or property for a participation in a pooled investment vehicle; or (ii) [t]he supervision of any person or persons so engaged" is an AP of a retail forex CPO.

61.     During the Relevant Period, Young Emerging Strategies solicited funds, securities, or property for a pooled investment vehicle for the purpose of engaging in leveraged, margined, or financed retail forex transactions; therefore, Young Emerging Strategies acted as a CPO, as defined by 7 U.S.C. § 1a(11) and 17 C.F.R. § 5.1(d)(1).

62.     During the Relevant Period, Young was associated with Young Emerging Strategies, a CPO, as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool. Therefore, Young was an AP of a CPO as defined by 17 C.F.R. § 5.1(d)(2).

63.     7 U.S.C. § 6*o*(1) prohibits CPOs and APs of CPOs, whether registered with the CFTC or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from (A) employing devices, schemes or artifices to defraud any client or participant or prospective client or participant, or (B) engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

64.     Defendants, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in connection with leveraged, margined, or financed retail forex transactions, knowingly or recklessly:

(1) made material misrepresentations and omissions about—

- Defendants' past success trading forex;

- the profitability of trading retail forex with Defendants;

- how Pool Participant funds would be treated, i.e., that Pool Participants would have their own separate trading subaccounts;

- the State of Illinois Secretary of State Securities Department's order prohibiting him from trading, among other things, foreign currency and identifying his past conduct in defrauding investors; and

- guaranteeing the return of Pool Participants' initial investments; and

(2) misappropriated Pool Participant funds.

65.     By reason of the conduct described above, Defendants, through use of the mails or any means of instrumentality of interstate commerce:  (1) knowingly or recklessly employed devices, schemes or artifices to defraud Pool Participants and prospective Pool Participants; or (2) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon Pool Participants or prospective Pool Participants, by misappropriating Pool Participant funds and making material misrepresentations to Pool Participants.

66.     By reason of the foregoing, Defendants violated 7 U.S.C. § 6*o*(1)(A), (B).

67.     When Young committed the acts, omissions, and failures in violation of

7 U.S.C. § 6*o*(1)(A), (B), he was acting within the scope of his agency, employment, and office

at Young Emerging Strategies; therefore, such acts, practices, omissions, or failures are deemed

to be those of Young Emerging Strategies pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

68.     At all times relevant to this Complaint, Young controlled Young Emerging

Strategies, directly or indirectly, and did not act in good faith or knowingly induced, directly or

indirectly, Young Emerging Strategies' conduct alleged in this Count; therefore, pursuant to

7 U.S.C. § 13c(b), Young is liable for Young Emerging Strategies' violations of

7 U.S.C. § 6*o*(1)(A), (B).

69.     Each act of misrepresentation, omission of material fact or misappropriation,

including, but not limited to, those specifically alleged herein, is alleged as a separate and

distinct violation of 7 U.S.C. § 6*o*(1)(A), (B).

### COUNT III - Failure to Register as a Commodity Pool Operator

**Violations of Sections 2(c)(2)(C)(iii)(I)(cc), and 4m(1) of the Act,
7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and
Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2)(i) (2022)
(All Defendants)**

70.     Paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

71.     7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), prohibits any person, unless registered, from

operating or soliciting funds, securities, or property for any pooled investment vehicle that is not

an eligible contract participant in connection with agreements, contracts, or transactions

described in 7 U.S.C. § 2(c)(2)(C)(i).

72.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it

shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the

mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO] . . . ."

73.     Similarly, 17 C.F.R. § 5.3(a)(2)(i) requires "any commodity pool operator, as defined in § 5.1(d)(1)" to be registered with the Commission.

74.     By reason of the foregoing, Young Emerging Strategies engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in leveraged, margined, or financed retail forex transactions; therefore, Young Emerging Strategies acted as a CPO, as defined by 7 U.S.C. § 1a(11).

75.     Young Emerging Strategies, while using the mails or means of interstate commerce in connection with its business as a CPO, was not registered with the CFTC as a CPO.

76.     By reason of the foregoing, Young Emerging Strategies acted as an unregistered CPO in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and 17 C.F.R. § 5.3(a)(2)(i).

77.     At all times relevant to this Complaint, Young controlled Young Emerging Strategies, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Young Emerging Strategies' conduct alleged in this Count; therefore, pursuant to 7 U.S.C. § 13c(b), Young is liable for Young Emerging Strategies' violations of 7 U.S.C. § 6m(1).

**COUNT IV – Failure to Register as an Associated Person of a Commodity Pool Operator**

**Violations of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act,**
**7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) and**
**Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2)(ii) (2022)**
**(All Defendants)**

78.     Paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

79.     7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), prohibits any person, unless registered, from operating or soliciting funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant in connection with agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

80.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2) makes it "unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent . . . in any capacity that involves . . . the solicitation of funds, securities, or property for a participant in a commodity pool[.]"

81.     7 U.S.C. § 6k(2) makes it "unlawful for any commodity pool operator to permit [an unregistered AP] to become or remain associated with the [CPO] in such capacity if the [CPO] knew or should have known that such person was not so registered[.]"

82.     Similarly, 17 C.F.R. § 5.3(a)(2)(ii) requires "any associated person of a commodity pool operator, as defined in § 5.1(d)(2)" to be registered with the Commission.

83.     During the Relevant Period, Young was associated with Young Emerging Strategies as a member, partner, officer, employee, consultant, agent, or in a similar capacity, and Young solicited funds for participation in the YES Forex Pool.

84.     Young was never registered with the Commission as an AP of Young Emerging Strategies.

85.     By reason of the foregoing, Young acted as an unregistered AP of Young Emerging Strategies, a CPO, in violation of 7 U.S.C. § 6k(2).

86.     During the Relevant Period, Young Emerging Strategies knew that Young acted as an unregistered AP of Young Emerging Strategies in violation of 7 U.S.C. § 6k(2).

87.     When Young failed to register with the Commission as an AP, he was acting within the scope of his agency, employment, and office at Young Emerging Strategies; therefore, such acts, practices, omissions, or failures are deemed to be those of Young Emerging Strategies pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

88.     At all times relevant to this Complaint, Young controlled Young Emerging Strategies, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Young Emerging Strategies' conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Young is liable for Young Emerging Strategies' violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) and 17 C.F.R. § 5.3(a)(2)(ii).

## COUNT V – Failure to Provide Pool Disclosures and Other Required Documents, and Failure to Make and Keep Records Concerning the Commodity Pool and CPO

### Violation of Regulations 4.21, 4.22, 4.23, and 5.4 17 C.F.R. §§ 4.21, 4.22, 4.23, 5.4 (2022)
### (All Defendants)

89.     Paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

90.     17 C.F.R. § 5.4 states that 17 C.F.R. pt. 4 applies to any person required pursuant to 17 C.F.R. pt. 5 to register as a retail forex CPO, and that "[f]ailure by any such person to comply with the requirements of part 4 will constitute a violation of this section and the relevant section of part 4."

91.     17 C.F.R. § 4.21, in relevant part, provides that:

> [E]ach [CPO] registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool . . . .

92. Upon information and belief, during the Relevant Period, Young Emerging Strategies did not provide to prospective Pool Participants a Disclosure Document with the necessary disclosures in accordance with 17 C.F.R. §§ 4.24 and 4.25.

93. 17 C.F.R. § 4.22 requires, in relevant part, that CPOs (registered or required to be registered) provide periodic account statements to Pool Participants—presented and computed in accordance with generally accepted accounting principles—itemizing, among other things, the total amount of realized net gain or loss on commodity interest positions liquidated during the reporting period, the total amount of unrealized net gain or loss on commodity interest positions during the reporting period, and the total amount of net gain or loss from all other transactions in which the pool engaged during the reporting period.

94. 17 C.F.R. § 4.23(a)-(b) requires, in relevant part, that CPOs (registered or required to be registered) must make and keep certain books and records concerning the commodity pool and the CPO. Among other things, CPOs must make and keep records of statements of financial condition of the pool, all receipts and disbursements of money or other property, and books and records of all other transactions in which the pool operator engaged.

95. During the Relevant Period, Young Emerging Strategies did not provide periodic account statements to Pool Participants that itemized the total amount of realized net gain or loss on commodity interest positions liquidated during the reporting period, the total amount of unrealized net gain or loss on commodity interest positions during the reporting period, and the total amount of net gain or loss from all other transactions in which the YES Forex Pool engaged

during the reporting period. Young Emerging Strategies also did not make and keep records concerning the YES Forex Pool, including all receipts and disbursements of money, securities, and other property, statements of the YES Forex Pool's financial condition, or books and records of all other transactions in which Young Emerging Strategies engaged.

96.     By reason of the foregoing, Young Emerging Strategies violated 17 C.F.R. §§ 4.21, 4.22, 4.23, 5.4.

97.     At all times relevant to this Complaint, Young controlled Young Emerging Strategies, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Young Emerging Strategies' conduct alleged in this Count; therefore, pursuant to 7 U.S.C. § 13c(b), Young is liable for Young Emerging Strategies' violations of 17 C.F.R. §§ 4.21, 4.22, 4.23, 5.4.

98.     Each failure to furnish the required disclosure documents and account statements and reports to prospective Pool Participants and Pool Participants, and failure to make and keep records, including, but not limited to, those specifically alleged herein, is a separate and distinct violation of 17 C.F.R. §§ 4.21, 4.22, 4.23, 5.4.

## COUNT VI – Failing to Operate a Pool as a Separate Entity, Failing to Accept Funds in the Name of the CPO, and Commingling Pool Property

### Violation of Regulations 4.20 and 5.4, 17 C.F.R. §§ 4.20, 5.4 (2022)

99.     Paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

100.     As noted above, 17 C.F.R. § 5.4 states that 17 C.F.R. pt. 4 applies to any person required pursuant to 17 C.F.R. pt. 5 to register as a retail forex CPO, and that "[f]ailure by any such person to comply with the requirements of part 4 will constitute a violation of this section and the relevant section of part 4."

101.   17 C.F.R. § 4.20(a)(1) requires a CPO, whether registered or not, to operate its pool as a legal entity separate from that of the CPO.

102.   17 C.F.R. § 4.20(b) prohibits CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool.

103.   17 C.F.R. § 4.20(c) requires that a CPO may not commingle the property of any pool that it operates or that it intends to operate with the property of any other person.

104.   During the Relevant Period, Young Emerging Strategies, while acting as CPOs for the Pool, failed to operate the Pool as a separate legal entity separate from the CPO and from Young as an individual.  Defendants received Pool Participants' funds in the name of the CPO—Young Emerging Strategies—rather than the name of a legally cognizable commodity pool. Defendants commingled Pool Participants' funds with Young's funds by sending Pool funds to Young's personal bank account.

105.   By reason of the foregoing, Young Emerging Strategies violated 17 C.F.R. §§ 4.20(a)(1), (b), and (c), 5.4.

106.   At all times relevant to this Complaint, Young controlled Young Emerging Strategies, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Young Emerging Strategies' conduct alleged in this Count; therefore, pursuant to 7 U.S.C. § 13c(b), Young is liable for Young Emerging Strategies' violations of 17 C.F.R. §§ 4.20, 5.4.

107.   Each act of failing to operate the Pool as a separate legal entity, receiving Pool Participants' funds in the name of Young Emerging Strategies, and commingling pool funds with non-pool funds is alleged as separate and distinct violation of 17 C.F.R. §§ 4.20, 5.4.

## VI.    RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.    Find that Defendants violated Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A), (C), 4k(2), 4m(1), and 4o(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A), (C), 6k(2), 6m(1), 6o(1), and Regulations 4.20, 4.21, 4.22, 4.23, 5.2(b)(1), (3), 5.3(a)(2), and 5.4, 17 C.F.R. §§ 4.20, 4.21, 4.22, 4.23, 5.2(b)(1), (3), 5.3(a)(2), and 5.4 (2022); and

B.    Enter an order of permanent injunction enjoining Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in conduct described above, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A), (C), 6k(2), 6m(1), 6o(1), and 17 C.F.R. §§ 4.20, 4.21, 4.22, 4.23, 5.2(b)(1), (3), 5.3(a)(2), 5.4;

C.    Enter an order of permanent injunction restraining and enjoining Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

1.    Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

2.    Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022)), for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

3. Having any commodity interests traded on any Defendant's behalf;

4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2022); and

7. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2022)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

D. Enter an order directing Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

E. An order requiring Defendants, jointly and severally, to make restitution to persons who have sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.     Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the clients whose funds were received by them as a result of the acts and practices which constituted violations of the Act as described herein;

G.     Enter an order directing Defendants, jointly and severally, to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584, tit. VII, § 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2022), for each violation of the Act, as described herein;

H.     Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2); and

I.      Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

Dated: November 3, 2023

Respectfully submitted,

PLAINTIFF COMMODITY FUTURES
TRADING COMMISSION

s/ Monique M. McElwee
Nicholas S. Sloey (VA Bar #75438)
Monique M. McElwee (MO Bar #64018)
Commodity Futures Trading Commission
2600 Grand Boulevard, Suite 210
Kansas City, MO 64108
Telephone:    816-960-7700
Facsimile:    816-960-7751
nsloey@cftc.gov
mmcelwee@cftc.gov

Attorneys for Plaintiff